FILED
ASHEVILLE, N.C.
MAY 31 2017
U.S. DISTRICT COURT
W. DIST. OF N.C.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>)<br>JOSEPH FRANK KORZELIUS )<br>_____ ) | DOCKET NO. 1:17-cr-70<br><br>BILL OF INFORMATION<br>Violation:<br><br>18 U.S.C. § 1347 |

THE UNITED STATES ATTORNEY alleges:

1. From in or about October 2013 to in or about November 2016, JOSEPH FRANK KORZELIUS engaged in a scheme to defraud the North Carolina Medical Assistance Program (hereinafter: "Medicaid") of at least $460,961.62 by submitting false and fraudulent claims alleging that he had performed certain behavioral health services, primarily psychotherapy services, when in reality those procedures were never performed.

**Relevant Individuals and Entities**

2. Defendant JOSEPH FRANK KORZELIUS was a resident of Tryon, Polk County, North Carolina

3. During the relevant time period, KORZELIUS was a Licensed Professional Counselor in North Carolina. KORZELIUS owned and operated WESTERN CAROLINA COUNSELING SERVICES (WCCS) in Tryon, North Carolina. KORZELIUS was an approved rendering provider of Medicaid-approved mental and behavioral health services through WCCS.

4. The Polk County school system was an approved provider of Medicaid-reimbursable mental and behavioral health services. At all relevant times, Polk County had a

1

dedicated school psychologist position as well as programs to provide Medicaid approved mental and behavioral health services to eligible students.

### The Medicaid Program

5. Medicaid is a state administered program aided by federal funds and it is a "health care benefit program," as defined in Title 18, United States Code, Section 24(b).

6. Medicaid provides health insurance coverage to certain categories of low-income individuals, including children, pregnant women, parents of eligible children, and people with disabilities. In North Carolina, the Medicaid program is administered by the North Carolina Department of Medical Assistance (DMA).

7. A Medicaid "provider" is an individual or entity who furnishes services through a provider agreement with Medicaid, or, for the Managed Care Program, any individual or entity that is engaged in and legally authorized to deliver Medicaid covered health care services within a particular state. In North Carolina, public funds for mental health, substance use and intellectual/developmental disability services (hereinafter "mental and behavioral health") are managed through North Carolina Medicaid approved and subcontracted Managed Care Organizations (MCOs).

8. During the relevant time, KORZELIUS and WCCS were authorized providers of mental and behavioral health services in North Carolina through a Managed Care Program. The Medicaid approved MCO for KORZELIUS and WCCS initially was Western Highlands Network. Western Highlands later merged with Smoky Mountain MCO (Smoky), which, in turn, later changed its name to Vaya Health (Vaya).

## Scheme to Defraud

9. From in or about October 2013 to November 2016, KORZELIUS engaged in a scheme to defraud Medicaid by falsely submitting fraudulent claims from WCCS, using billing code 90834 (45 minute Individual Psychotherapy), listing himself as the rendering provider, when in fact no such services were provided.

10. In 2007, KORZELIUS was hired as a school guidance counselor at Tryon Elementary School, a school within the Polk County system. The school counselor position did not have any professional licensing requirements as a condition of employment; the position did not have any clinical responsibilities, nor was KORZELIUS authorized by virtue of his employment to refer Polk County students to WCCS or to provide students with Medicaid reimbursable mental and behavioral health services.

11. KORZELIUS initially enrolled as a provider with Western Highlands, the local MCO that managed his WCCS services and Medicaid reimbursements, using the Tryon Elementary School street address as his address of record.

12. KORZELIUS identified students at his school, their siblings, and other family members as potential Medicaid beneficiaries. KORZELIUS also identified potential beneficiaries in the community at events such as soccer games or through chance encounters at places such as grocery stores. KORZELIUS then used these potential beneficiaries' identities in his scheme.

13. KORZELIUS looked up the identified individuals under a "Patient Search" function of the MCO provider website to obtain the information necessary to complete and submit a fraudulent claim through the MCO for Medicaid-approved reimbursement.

14. Virtually all the claims KORZELIUS submitted lacked any supporting

3

documentation such as clinical assessments, consents for treatment, treatment plans or progress notes. Some files contained bare minimum documentation such as a list of dates where KORZELIUS stated he may have seen the beneficiary around town in a non-clinical setting.

15. Examples of KORZELIUS' false and fraudulent billings include the following:

a. D.G. was the mother of six Medicaid recipients. KORZELIUS billed $26,004.79 for services purportedly provided to D.G.'s children from October, 2013 through November, 2016. None of D.G.'s children ever received mental health or psychological counseling services from KORZELIUS.

b. A.C. was a Medicaid recipient and the mother of three children, all Medicaid recipients. KORZELIUS billed Medicaid $14,198.31 for mental health services that he purportedly provided to A.C. and her children from October 10, 2013, through November, 2016. Neither A.C. nor her children received mental health or psychological counseling from KORZELIUS or WCCS. Additionally, KORZELIUS exploited his position as school counselor and took advantage of the fact that A.C. was legally blind when he requested her to sign Medicaid authorization forms that he knew to be fraudulent.

c. B.B. is the mother of two Medicaid recipients. From April 12, 2014, through November, 2016, KORZELIUS billed Medicaid $7,582.61 for services that he purportedly provided B.B.'s children. Neither of B.B.'s children ever received any mental health services or counseling, nor had B.B. given KORZELIUS or WCCS permission to counsel her children.

d. C.G. was the mother of a Medicaid recipient. From September, 2014 through June, 2016, KORZELIUS billed Medicaid $3,053.40 for mental health services

4

that he purportedly provided to C.G.'s child. Neither KORZELIUS nor WCCS ever provided services to C.G.'s child.

16. KORZELIUS controlled the bank accounts where Medicaid approved reimbursements for his fraudulent claims were deposited. From October 2013 through November, 2016, KORZELIUS submitted at least $460,961.62 in false and fraudulent claims to MCOs using this misappropriated Medicaid beneficiary information. KORZELIUS received at least $436,229.08 in Medicaid approved MCO reimbursements for those false and fraudulent claims.

## COUNT ONE
## 18 U.S.C. § 1347
## (Health Care Fraud)

17. The United States Attorney re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 15 of the Bill of Information, and further alleges that

18. From in or about October 2013 through in or about November 2016, in Polk County, within the Western District of North Carolina, and elsewhere, the defendant,

### JOSEPH FRANK KORZELIUS,

did knowingly and willfully execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money and property owned by and under the custody and control of any health care benefit program, as defined in Title 18, United States Code, Section 24, in connection with the delivery of and payment for health care benefits, items, and services, by submitting and causing to be submitted false and fraudulent claims to the North Carolina Division of Medical Assistance or its subcontracted Medicaid Managed Care Organizations seeking reimbursement for services which were not performed.

In violation of Title 18, United States Code, Section 1347 and 2.

6

## NOTICE OF FORFEITURE

Notice is hereby given of the provisions of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by section 981(a)(1)(C). The defendant has or had a possessory or legal interest in the following property that is subject to forfeiture in accordance with section 982 and/or section 2461(c):

a. all property involved in the violations alleged in this bill of information;

b. all property which is proceeds of such violations; and,

c. in the event that any property described in (a) or (b) cannot be located or recovered or has been substantially diminished in value or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant, to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more of the grounds stated above: A forfeiture money judgment in the amount of $436,229.08 in proceeds of the health care fraud violations set forth in this Bill of Information.

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

_____
TIMOTHY R. RODGERS
SPECIAL ASSISTANT UNITED STATES ATTORNEY

_____
KELLI H. FERRY
ASSISTANT UNITED STATES ATTORNEY